IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DUSTIN ALLEN EDBLOM**, | Case No. 6:23-cv-00177-IM |
| Petitioner, | |
| | **OPINION AND ORDER** |
| v. | |
| **JOSHUA HIGHBERGER**, | |
| Respondent. | |

**IMMERGUT, District Judge.**

Petitioner Dustin Allen Edblom ("Petitioner"), an individual in custody at Oregon State Correctional Institution, filed this habeas corpus proceeding pursuant to 28 U.S.C. § 2254 ("Section 2254"). Petitioner alleges, among other things, that his trial attorney was ineffective when she inaccurately advised him that he could be sentenced to life in prison without the possibility of parole pursuant to Oregon Revised Statute ("ORS") § 137.719, a "three strikes" law applicable to certain recidivist sex offenders. Because Petitioner's third, fourth, and fifth

PAGE 1 – OPINION AND ORDER

grounds for relief are procedurally defaulted, and because the Court must defer to the state court's denial of relief with respect to grounds one and two, the Petition for Writ of Habeas Corpus (ECF No. 1) must be denied.

## **BACKGROUND**

In January 2018, Petitioner pleaded guilty to six counts of Sexual Abuse in the First Degree and one count of Sexual Abuse in the Third Degree. (Resp't Exs., Ex. 101, ECF No. 21.) The postconviction court summarized Petitioner's crimes and subsequent plea negotiations,[1] as follows:

> On October 15, 2016, police received an initial report from a woman that her daughter's best friend, HO, contacted her through Facebook and reported that she had been "molested" by her older cousin. HO reported that she and her sister, DM, were staying at their grandmother's house while their mother, Diane O'Connor, was away at a wedding. Diane and her mother, Phyllis O'Connor, the victims' grandmother, were aware of petitioner's past conviction for second-degree sexual abuse, attempted first-degree sexual abuse, and sexual misconduct, and of petitioner's adjudication as a juvenile for second-degree abuse. Based on that history, HO and DM were not supposed to be alone with petitioner.
>
> However, on Friday, after HO and DM had been at the house for a couple of nights, the two ended up in the living room with petitioner watching movies after Phyllis had gone to bed. HO reported that she fell asleep on the couch and woke up in the early morning with petitioner rubbing her buttocks and "crotch." She moved away from petitioner, went outside of the residence, and began reporting the abuse to family members and friends. Once police arrived, DM also disclosed that at several times during the night, she woke up to petitioner rubbing her "crotch area through her clothes." Each time she awoke to the abuse, she told petitioner to stop, which he did, and then she fell asleep. However, DM would wake up at some point later to find petitioner abusing her again.
>
> During her interview with police, DM disclosed two other incidents earlier in the year when she was alone with petitioner and he sexually abused her. During one incident, DM was with petitioner and his then girlfriend and petitioner kissed her in a way that she interpreted as sexual. On another occasion, DM was alone with

---

[1] This Court must presume the accuracy of these factual findings in the absence of clear and convincing evidence to the contrary. *See* 28 U.S.C § 2254(e)(1) (instructing that state-court factual findings are presumed correct unless the petitioner rebuts the presumption "by clear and convincing evidence").

petitioner at her house. Petitioner came up to her room, began kissing DM, laid on top of her, and put his hand up DM's shirt and squeezed her breast. Petitioner began to unzip his pants, but DM told him to stop. After HO reported the abuse, the police were called. During the investigation, both victims were interviewed and evaluated at KidsFirst. Both victims reported the abuse consistently with what each had told family, friends, and police at the beginning of the investigation.

Petitioner fled but was eventually found by police and interviewed. Petitioner was on post-prison supervision at the time and his contact with the minor females was a violation of his post-prison supervision. Petitioner was eventually arrested and charged by information with four counts of first-degree sexual abuse and one count of third-degree sexual abuse. The case was presented to the Grand Jury where David C. Grice, a Springfield police officer, DM, and HO testified. That Grand Jury indicted petitioner in December 2016 on six counts of first- degree sexual abuse and one count of third-degree sexual abuse. Due to a clerical error, the original indictment indicated that DM's mother, Cindy Muhs, testified at Grand Jury when it was, in fact, DM.

Petitioner's first appointed attorney was James Jagger. Mr. Jagger spent about ten months on petitioner's case. Mr. Jagger sought several continuances of trial in order to sufficiently investigate the prosecution's witnesses, commission a medical evaluation of petitioner and seek independent testing of DNA evidence. Petitioner, maintaining his innocence, agreed to those continuances. During that time, the parties engaged in negotiations to settle the case. During these negotiations, the State offered a sentence of [ten] years. Petitioner declined to resolve the case by plea deal at that time. Petitioner asked Mr. Jagger to resign in September 2017, and Rebecca Davis was appointed.

On January 17, 2018, the parties engaged in a judicial settlement conference. As a result of those negotiation[s], Petitioner initially agreed to plead guilty to all [seven] counts and he would be sentenced to 240 months in prison. Prior to that settlement conference, the prosecution had filed notices of its intent to seek a presumptive life without parole sentence under ORS 137.719 if petitioner was convicted and of its intent to seek to admit evidence of petitioner's prior sexual offenses.[2] The prosecution had also timely filed a notice of allegations of enhancement factors.[3] During the settlement conference the parties and the

---

[2] The prosecutor first filed a notice of intent to seek a presumptive life sentence under ORS 137.719 on August 15, 2017, before filing an amended notice on January 17, 2018. (Resp't Ex. 113 at 74, 105.)

[3] The notice alleged that dispositional and/or durational departure sentences were warranted because (1) "[Petitioner] committed the crime(s) alleged while on probation or post-prison supervision, which failed to deter [Petitioner] from committing further criminal offenses[;]" and (2) "[Petitioner] has engaged in persistent involvement in similar offenses unrelated to the current counts charged in this charging instrument." (Resp't Ex. 113 at 3.)

judge discussed the likelihood that petitioner could be sentenced to life without parole and that the prosecution could admit evidence of petitioner's prior bad acts. During the course of those settlement negotiations, the prosecution noticed that the original indictment included the clerical error naming Cindy Muhs as a Grand Jury witness rather than DM and reported that information to petitioner and the court. Before the January plea hearing the prosecutor had filed an amended indictment correcting the names of the Grand Jury witnesses. On January 19, Petitioner appeared in court to enter his plea pursuant to the plea agreement. During the colloquy with the judge he indicated that he did not understand the plea agreement and was unwilling to enter the pleas.[4] The trial judge stopped the hearing and indicated that the case would proceed to trial. Petitioner was arraigned on the Amended Indictment.

Petitioner appeared again in court on January 24, 2018, the day set for trial, after the parties had engaged in additional settlement discussions. After the failed effort to enter a guilty plea, the prosecution increased the prison time required for a plea agreement and agreed to a deal that would have petitioner plead guilty to all seven charges in exchange for a sentence of 270 months. Petitioner entered the pleas and the trial court accepted petitioner's guilty pleas and sentenced petitioner to 270 months [in] prison. Petitioner did not appeal his conviction.

Prior to entry of plea, trial counsel had discussed the issue of the possibility of the life sentence with Petitioner. Petitioner reported during a jail call that he had discussed the risk of a life sentence with his attorney. Petitioner stated that his attorney told him, essentially, that it was not guaranteed that he would receive a life sentence and that, if he did, he could appeal the sentence and his chances of success on appeal were about "50/50."

Petitioner was 32 years old at the time of his arrest and 35 at the time he entered his plea. Prior to the events of this case, Petitioner had been convicted of two counts of Sexual Abuse in the Second Degree and one count of Attempted Sexual Abuse in the First Degree in a single proceeding in 2018. On February 8, 2008, Petitioner had been convicted of Sexual Misconduct, a misdemeanor. In 2002, Petitioner had been adjudicated in a juvenile court proceeding for sexual abuse in the Second Degree for acts that occurred when Petitioner was 15 years old.

Counts 1 through 6 were Measure 11 charges carrying a mandatory minimum sentence of 75 months. Based on Petitioner's prior criminal history, he was a category A and with the enhancement factors could have been sentenced to 90 months on counts 1-6. Count 7 was a class A misdemeanor.

---

[4] Petitioner expressed reluctance about accepting full responsibility for his crimes, explaining to the trial court that he had asked his attorney if they could agree to "pleading to this, but not pleading guilty." (Resp't Ex. 114 at 37.)

(Resp't Ex. 132 at 2-3 (citations omitted).)

On May 1, 2018, Petitioner filed a *pro se* petition for postconviction relief ("PCR"). (Resp't Ex. 105.) Petitioner attached to the petition a "list . . . of issues that may or may not have basis for appeal[,]" including the prosecutor's discovery only "a few days before trial" that the indictment erroneously listed DM's mother as a testifying witness instead of DM. (*Id.* at 4, 6, 8.) Petitioner specifically alleged that he would have accepted the prosecutor's ten-year offer "[i]f the grand jury indictment had been accurate . . . because it would indicate that [DM] intended to testify despite her reluctance to testify in front of a jury as stated in [her] Kids[First] interview." (*Id.* at 8.) Petitioner further alleged that he did not want to accept the prosecutor's subsequent 240-month offer after learning that DM testified before the grand jury, but that trial counsel refused to deliver a letter to the prosecutor "better explaining the problem"[5] and communicating Petitioner's desire to accept the original ten-year offer. (*Id.*) Petitioner did not mention or otherwise challenge in the petition trial counsel's advice with respect to the presumptive life sentence pursuant to ORS 137.719.

The PCR court appointed counsel, who filed a first amended PCR petition on Petitioner's behalf in December 2018. (Resp't Ex. 106.) Soon thereafter, on January 30, 2019, Petitioner filed a notice pursuant to *Church v. Gladden*, 244 Or. 308 (1966),[6] setting forth several additional

---

[5] In the letter, which was dated January 21, 2018, Petitioner explained that his belief that DM did not testify before the grand jury "weighed heavily" on his decision to reject the initial ten-year offer and that he then believed "it would have been in [his] best interest [to take the deal] based on knowing that [DM] did attend the grand jury indictment hearing and having gone over the case and the risk of not being a part of my son's life or my parents' life at all before they die." (Resp't Ex. 115 at 13.)

[6] In *Church*, the Oregon Supreme Court held that, where a litigant wishes to pursue a claim that his attorney refuses to raise, he must inform the court of the attorney's failure to

claims he wished to pursue including trial counsel's failure to "advocate that ORS 137.719 was not applicable." (Resp't Ex. 107 at 3.)

In May 2019, Petitioner's PCR attorney filed a second amended PCR petition incorporating most of Petitioner's *Church* claims. (Resp't Ex. 110.) Petitioner alleged in the second amended petition that trial counsel was constitutionally deficient in the following respects:

I.      Close in time to the plea, I was taking medications to help with anxiety. On the date of the plea, I was unable to take that medication. My attorney did not create a delay so I could engage in the plea knowingly. I was forced to enter a plea during a panic attack.

II.     Trial counsel failed to negotiate with the State in the manner I directed. Most specifically, a ten year offer was on the table. I refused that offer because it required me to plead to crimes identified in the Indictment/Information using the name of a victim that does not exist, and the Indictment was obtained without the testimony of the victim. After the Indictment/Information correctly identified the two persons, I asked trial counsel to provide a letter to the State indicating that I would take the ten year offer. Trial counsel refused, and I was left with a 270 month offer.

III.    Trial counsel overcame my will by, during the panic attack, calling me names and threatening to hit me, in an effort to induce me to take the plea agreement of 270 months instead of working to get the ten year offer back on the table.

IV.     Trial counsel failed to investigate this case. For example, she did not know whether complaining witness [DM] had testified at Grand Jury and did not confirm that the Amended Indictment contained a false statement regarding [DM] being willing to cooperate with the State by testifying at Grand Jury. Trial counsel then prejudiced the defense both for trial and negotiation by stating to the prosecutor, "I cannot win this case." She indicated by this statement that she had no defense prepared. Had trial counsel investigated the case and Petitioner's criminal history, she would not have made this statement. Failure to investigate and prepare a defense, and claiming publicly during settlement conferences that she could not win at trial, had the effect of eliminating any chance Petitioner had of obtaining a favorable resolution during settlement or trial. These facts,

---

follow a legitimate request, and may seek a court order requiring the attorney to comply with the litigant's request or the appointment of substitute counsel. 244 Or. at 311-12.

with trial set for the following week with no set over requested, compelled Petitioner to take a plea he did not want to take.

V.      Petitioner's plea was not knowing, voluntary, or intelligent because he would not have pleaded guilty had he been properly informed regarding the prior testimony against him, namely the presence and absence of Grand Jury witnesses.

VI.     Petitioner stated that he intended to go to trial and refused plea offers because of that intent. In court at the time of the settlement conference Petitioner stated clearly that he did not understand what was being asked of him. Had trial counsel obtained the help Petitioner needed to understand what was happening, he would not have lost the opportunity for a lesser offer, and he would not have made settlement decisions without understanding the proceedings at that time.

VII.    Trial counsel failed to evaluate the State's threat of a presumptive life sentence based on ORS 137.719. When the State filed its Notice of Intent to seek this sentence, trial counsel did not evaluate Petitioner's criminal history. After this failure, trial counsel joined with the State in telling Petitioner that he was facing a presumptive life in prison. Based on this failure, trial counsel permitted and encouraged the settlement judgment to operate with the mistaken belief that Petitioner was facing a presumptive life in prison sentence. Then both trial counsel and the settlement conference judgment worked together to convince Petitioner that ORS 137.719 exposed Petitioner to a presumptive life sentence; This is not true. Had Petitioner been properly advised regarding the predicate offenses necessary to trigger the presumptive life sentence of ORS 137.719, which predicate condition Petitioner does not satisfy, Petitioner would not have entered a plea and would have proceeded to trial.

VIII.   Petitioner's plea was not knowing, voluntary, and intelligent because he would not have pleaded guilty had he been properly informed regarding ORS 137.719.

(Resp't Ex. 110 at 5-7 (footnotes omitted).)

        To support his claims, Petitioner submitted to the PCR court his own declaration, averring, among other things, that "[a]t the time of the settlement conference, I believed because of what my attorney told me, that ORS 137.719 meant I was exposed to a potential sentence of life in prison." (Resp't Ex. 115 ¶ 10.) Petitioner noted that the settlement judge also "emphasized" the risk of a life sentence. (*Id.* ¶ 12.) Petitioner attested that this "threat of life in

prison was a major contributing reason" he decided to plead guilty, and that he would have gone to trial if properly advised that ORS 137.719 did not apply. (*Id.* ¶ 13.) However, it was not until he "got to prison . . . [and] reviewed the statute and case law" that he learned that ORS 137.719 did not apply. (*Id.* ¶ 21.)

In opposition, the State submitted a declaration from the prosecutor, who attested that Petitioner was "highly likely" to be convicted of the charged crimes. (Resp't Ex. 124 ¶ 5.) She specified that both victims "clearly and consistently described the abuse to the police, child advocates, and at Grand Jury[,]" and noted that she "expected both to provide compelling, believable testimony at trial." (*Id.*) The prosecutor also explained that she intended to present evidence of Petitioner's prior sexual misconduct, the majority of which she expected would be admitted at trial. (*Id.*)

The State also submitted an audio recording of the telephone call Petitioner made to a friend while in pretrial custody. (Resp't Ex. 128.) During the call, Petitioner explained that he was considering whether to plead guilty, and that his attorney had given him a "50/50" chance of serving a life sentence if convicted. (*Id.*) His friend asked if this meant that Petitioner faced a "super long shot" of avoiding the life sentence, to which Petitioner replied that "fifty percent is better than none." (*Id.*) Petitioner expressed concern, however, that the prosecutor could present evidence of his prior sexual abuse convictions if he went to trial. (*Id.*) Petitioner then suggested that he might want to go to trial if only to be released from pretrial detention so that he could get some personal matters "squared away" in case he ultimately went to prison "instead of just going straight down" by pleading guilty. (*Id.*) Petitioner ended the call by asking his friend for help gathering funds to secure his release on bail. (*Id.*)

PAGE 8 – OPINION AND ORDER

After a brief trial, the PCR court denied relief. (Resp't Exs. 131, 132.) As relevant here, the PCR court concluded that trial counsel "failed to exercise reasonable skill and judgment in failing to evaluate the State's threat of a presumptive life sentence based on ORS 137.719[,]"[7] but that Petitioner failed to prove prejudice. (Resp't Ex. 132 at 7-8.) The PCR court reasoned that Petitioner "still faced a possible 420 months in prison" and therefore the 270-month "plea offer and entry of plea would have been reasonable even if Petitioner was not facing a life sentence." (*Id.* at 8.)

The PCR court also found that Petitioner faced a high likelihood of being convicted at trial, concluding that trial counsel's prediction that she "could not win" Petitioner's case was a "realistic" and reasonable assessment. (*Id.* at 6.) The PCR court explained:

> There were two named victims who had given statements to family members, the police and KidsFirst. There were witnesses who could confirm that Petitioner was in contact with the girls at the time in question. Petitioner could not testify at trial without the jury learning that he had prior convictions for sex related crimes and that the mere contact with the girls was a violation of his post-prison supervision.

(*Id.*)

Finally, the PCR court found that Petitioner's averments, including Petitioner's "claim that he would not have entered a plea rather than going to trial if he had known he was not subject to a li[f]e sentence[,]" were "not credible." (*Id.* at 3, 8.) The PCR court explained that

---

[7] The PCR court explained:

> Petitioner had only one prior sentence for a felony sex crime. The 2013 convictions constituted a single prior sentence under [ORS 137.719]. Sexual Misconduct is not a felony. The juvenile adjudication does not constitute a "sentence for a felony sex crime." *State v. Thompson*, 166 Or. App. 370 (2000); *State v. Trice*, 146 Or. App. 15 (1997). Reasonable counsel should have advised Petitioner that he was not subject to the potential life sentence under ORS 137.719(1) and should have also advised the judge and prosecutor accordingly.

(Resp't Ex. 132 at 7-8.)

Petitioner's testimony was "contrary to the record[,] . . . internally contradictory[,] . . . [and] inconsistent[,]" and identified in the record examples of such discrepancies.[8] The PCR court further noted that Petitioner had not "mention[ed] . . . his concern of a possible life sentence in any of his court appearances," nor had he raised the issue in his *pro se* PCR petition despite learning "that he was not subject to a possible life sentence when he arrived at prison." (*Id.*) Instead, he waited "almost [eight] months" before raising the claim. (*Id.*) Given this evidence, the PCR court concluded that "Petitioner did not prove that he would not have pleaded guilty had he been properly informed regarding ORS 137.719" or that "his trial attorney failed to exercise reasonable professional skill and judgment in failing to ensure that Petitioner's plea was knowing, voluntary, and intelligent because he would not have pleaded guilty had he been properly informed regarding ORS 137.719." (Resp't Ex. 132 at 8.)

Petitioner appealed, alleging that the PCR court erred in denying his claims concerning trial counsel's "fail[ures] to accurately advise him regarding the maximum sentence (Claim 7)" and to ensure "that his guilty plea was not knowing, intelligent, and voluntary . . . (Claim 8)." (Resp't Ex. 135 at 2.) The Oregon Court of Appeals issued a written opinion affirming the PCR court's judgment, *Edblom v. Cain*, 322 Or. App. 527 (2022), and the Oregon Supreme Court denied review, *Edblom v. Cain*, 370 Or. 694 (2022).

On February 6, 2023, Petitioner filed the instant habeas petition in this Court raising five grounds for relief:

> **Ground One:** Petitioner's plea was unlawfully induced because it was not knowing, voluntary, or intelligent.

---

[8] The PCR noted, for example, that Petitioner "on one hand . . . states that he maintained his innocence throughout the proceeding and was determined to go to trial but also claims his attorney was ineffective for failing to create a delay so that he could take advantage of the plea offer for a 240-month sentence." (*Id.* at 4.)

**Supporting Facts:** Petitioner was informed by his attorney, the settlement judge, and the D.A. that he was subject to the presumptive sentence under 137.719. This was not accurate information. This caused petitioner to accept a plea he did not want to take.

**Ground Two**: Petitioner's trial attorney rendered ineffective assistance of counsel for failing to accurately advise him regarding the maximum sentence.

**Supporting Facts:** Petitioner was informed by his attorney, the settlement judge, and the D.A. that he was subject to the presumptive sentence under 137.719.

**Ground Three**: Trial counsel rendered ineffective assistance of counsel for failing to negotiate with the state in the manner petitioner had directed that would have led to a more favorable resolution.

**Supporting Facts:** Petitioner wrote a letter to the D.A. requesting that she allow him to accept the prior ten-year offer. The basis for this request was due to the misinformed threat of life upon a single conviction and the amended indictment that added [DM] (the alleged victim in the majority of the charges) as a witness. Petitioner's attorney refused to deliver the letter and would not negotiate for the ten-year offer.

**Ground Four:** Petitioner's trial counsel was inadequate and ineffective for failing to investigate his case.

**Supporting Facts:** Petitioner's trial attorney failed to investigate petitioner's prior convictions that would have shown that he was not subject to the presumptive sentence under 137.719. She did not investigate whether or not the information in the indictment was accurate. And lastly, she did not investigate information that would have been helpful in formulating a defense by refusing to interview [DM] after being given permission from her mother and refusing to acquire phone records that would have shown that the majority of the charges were not possible.

**Ground Five:** Petitioner's plea was not knowing, voluntary, and intelligent because he was misinformed about the presence or absence of grand jury witnesses.

**Supporting Facts:** Petitioner was originally given an indictment that indicated [DM] as absent the grand jury indicating she was unwilling to testify against [Petitioner]. Around a year later and during settlement negotiations, the D.A. amended the indictment including [DM] as a witness. [DM] declared under penalty of perjury that she did not attend the grand jury.

(Pet. at 3-4.) Respondent urges this Court to deny habeas relief, arguing that Grounds One,

Three, Four, and Five are procedurally defaulted, and that the state-court decision denying relief

on Ground One is entitled to deference. (Resp. to Pet. at 4-13, ECF No. 19.) Respondent argues

in the alternative that because Petitioner did not address in his supporting brief Respondent's

procedural defenses to Grounds Three, Four, and Five, Petitioner failed to carry his burden on

those claims, and they should be dismissed. (Resp't Reply at 2-3, ECF No. 55.)

## **DISCUSSION**

I.    **This Court Liberally Construes Ground One to Encompass the Ineffective
      Assistance Claim Presented in State Court**

In Ground One, Petitioner alleges that his plea was not knowing, intelligent, or voluntary

because his lawyer, the settlement judge, and the prosecutor "unlawfully induced" him to plead

guilty by providing him inaccurate information regarding the presumptive life sentence under

ORS 137.719. (Pet. at 3.) Respondent characterizes Ground One as a "stand-alone" challenge to

the voluntariness of Petitioner's guilty plea and argues that Petitioner did not present such claim

to the state courts, raising it instead as a claim for the ineffective assistance of counsel. (Resp. to

Pet. at 9; Resp't Reply at 3-4.) Respondent argues that because Petitioner can no longer present

the stand-alone claim in state court, it is procedurally defaulted. (*Id.*)

This Court agrees that Petitioner did not present a stand-alone challenge to the

voluntariness of his guilty plea in state court and, because he no longer may do so, such claim is

procedurally defaulted. *See Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007) (explaining

that "where a petitioner did not properly exhaust state remedies and the court which the

petitioner would be required to present his claims in order to meet the exhaustion requirement

would now find the claims procedurally barred,' the petitioner's claim is procedurally defaulted"

(quoting *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)); *see also* OR. REV. STAT. §

138.510(3) (setting forth a two-year limitation period in which to file for postconviction relief);

OR. REV. STAT § 138.550(3) (instructing that all grounds for relief must be asserted in the

original or amended postconviction relief petition unless the grounds could not reasonably have been raised).

Petitioner does not dispute that a stand-alone claim is procedurally barred. Petitioner instead clarifies in his sur-reply that he intended to raise in Ground One "the same [ineffective assistance] claim . . . that was properly presented to the state court." (Reply to Resp't Reply at 16, ECF No. 61.) Petitioner thus argues that Ground One is not procedurally defaulted and asks this Court to address his ineffective assistance claim on the merits. (*Id.*)

Based on Petitioner's arguments and the record in this case, this Court elects to liberally construe Ground One to encompass Petitioner's claim that his trial attorney was ineffective in failing to ensure that his guilty plea was knowing, intelligent, and voluntary. However, for the reasons explained below, Petitioner is not entitled to relief on the merits of that claim.

## I.    This Court Must Defer to the State Court's Denial of Grounds One and Two

### A.    Legal Standards

#### 1.    Deference to State Court Decisions

The Antiterrorism and Effective Death Penalty Act ("AEDPA") prohibits relitigation of any claim adjudicated on the merits in state court unless such adjudication resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

A state-court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and

nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of clearly established federal law occurs if the state court correctly identifies the governing legal principle but misapplies that principle to the facts at hand. *See id.* at 407 (holding that "a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case"). The "unreasonable application" clause requires the state court's decision to be more than merely erroneous or incorrect. *See id.* at 411 (noting that "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly"). Rather, the state court's application of clearly established federal law must be objectively unreasonable. *See id.* at 409 (instructing that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable").

"Clearly established Federal law" under the AEDPA "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412; *see also Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (noting that "[a] legal principle is 'clearly established' within the meaning of [28 U.S.C. § 2254(d)(1)] only when it is embodied in a holding of [the Supreme] Court"). To be "clearly established," a Supreme Court precedent must "'squarely address[] the issue' in the case before the state court, or 'establish[] a legal principle that clearly extends' to the case before the state court[.]" *Andrews v. Davis*, 798 F.3d 759, 773 (9th Cir. 2015) (citations omitted). If no "clearly established Federal

law" governs the issue at bar, the federal habeas court "must defer to the state court's decision." *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009).

A federal habeas court may not disturb a state-court decision on factual grounds unless the state court's decision was based on an unreasonable determination of the facts in light of the evidence before it. *See* 28 U.S.C. § 2254(d)(2). Under the "unreasonable determination" clause, "[t]he question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). The Ninth Circuit has clarified that when a petitioner challenges the substance of a state court's findings, the federal habeas court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.), *cert denied*, 543 U.S. 1038 (2004).

The AEDPA thus imposes "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (simplified); *see also White v. Wheeler*, 577 U.S. 73, 76-77 (2015) (acknowledging that the "AEDPA, by setting forth necessary predicates before a state-court judgment may be set aside, erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court") (simplified). "The petitioner carries the burden of proof." *Pinholster*, 563 U.S. at 181.

### 2.    Ineffective Assistance of Counsel

"[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland* [*v. Washington*, 466 U.S 668 (1984)]." *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (*citing Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). Under *Strickland*, the

petitioner first must show that counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 686. That showing requires the petitioner to overcome a strong presumption that the challenged conduct falls within the "wide range of reasonable professional assistance[.]" *Id.* at 689. The first prong therefore is satisfied only if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

A petitioner then must demonstrate prejudice: "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* Therefore, it is not enough if counsel's errors had only "some conceivable effect on the outcome of the proceeding." *Id.* at 693. Where counsel's alleged ineffectiveness arises from the plea process, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Lafler v. Cooper*, 566 U.S. 156,163 (explaining that "[in] the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice"). This inquiry can "closely resemble[s] the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial" because whether counsel's errors prejudiced a petitioner by causing him to plead guilty can depend, in large part, on a prediction about the outcome at a possible trial. *Hill*, 474 U.S. at 59-60.

Whether in the context of a trial or guilty plea, analyzing an ineffective assistance of counsel claim under the AEDPA is "all the more difficult" because both standards are "highly deferential and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562

U.S. 86, 105 (2011) (simplified). The question under such circumstances "is not whether defense

counsel's performance fell below *Strickland*'s standard." *Id.* at 101. Rather, "[t]he pivotal

question is whether the state court's application of the *Strickland* standard was unreasonable." *Id.*

Analyzing an ineffective assistance claim under the AEDPA thus requires that "[a] state

court . . . be granted a deference and latitude that are not in operation when the case involves

review under the *Strickland* standard itself." *Id.*

**B.    Analysis**

As noted above, Petitioner advanced Grounds One and Two during his PCR proceedings,

arguing that his trial attorney was ineffective when she inaccurately advised him that he

potentially faced a life sentence under ORS 137.719 and failed to ensure that his guilty plea was

knowing, intelligent, and voluntary. Although the PCR court agreed that trial counsel's failure to

accurately advise Petitioner constituted deficient performance, it denied relief, finding that

Petitioner failed to establish prejudice.

On appeal, Petitioner argued that the PCR court correctly found deficient performance

but erred in concluding that Petitioner was not prejudiced. (Resp't Ex. 135.) The Oregon Court

of Appeals disagreed, explaining:

> In this case, we conclude that the [PCR] court did not err. First, the [PCR] court
> expressly found petitioner not to be credible, including when he asserted that he
> would have rejected the plea offer and proceeded to trial had he been informed
> that the presumptive life sentence under ORS 137.719(1) did not apply to him.
> Second, on this record, the [PCR] court permissibly determined that the state's
> case against petitioner was strong, and he was likely to be convicted at trial. *Lee*
> [*v. United States*], [582] U.S. [357, 367], 137 S. Ct. [1958][,] 1966 [(2017)] ("A
> defendant without any viable case defense will be highly likely to lose at trial.
> And a defendant facing such long odds will rarely be able to show prejudice from
> accepting a guilty plea that offers him a better resolution than would be likely
> after trial. *** Where a defendant has no plausible chance of an acquittal at trial,
> it is highly likely that he will accept a plea if the Government offers one."). Third,
> petitioner faced the possibility of a substantially longer sentence if convicted after
> trial (35 years) than offered to him in the plea deal he accepted (22.5 years). *See,*

*e.g.*, *In re Sealed Case*, 488 F.3d 1011, 1017 (D.C. Cir. 2007) (defendant "failed to demonstrate a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial" where, if defendant had "proceeded to trial and been convicted, he would have confronted a substantially higher Sentencing Guidelines range than that applicable to his plea" (internal quotation marks omitted)).

*Edblom*, 322 Or. App. at 530-31.

Respondent contends that the state court reasonably concluded that Petitioner failed to prove he was prejudiced by trial counsel's failure to provide accurate advice regarding the presumptive life sentence under ORS 137.719. Petitioner counters in his supporting brief that the state court's prejudice finding was objectively unreasonable because (1) the state court's factual findings are incorrect and constitute an unreasonable determination of the facts; and (2) the state court misapplied the prejudice standard by predominantly relying on the strength of the state's case rather than Petitioner's desire to proceed to trial. *See Lee*, 582 U.S. at 364 (explaining that "[w]hen a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain") (simplified). This Court disagrees.

As the Court of Appeals noted, the PCR court explicitly found Petitioner was not credible and rejected his claim that he would not have pleaded guilty but for trial counsel's failure to advise him that he was not subject to a life sentence pursuant to ORS 137.719. Those credibility findings are supported by the record and are presumed correct absent any clear and convincing evidence to the contrary. *See* 28 U.S.C § 2254(e)(1) (instructing that state-court factual findings are presumed correct unless the petitioner rebuts the presumption "by clear and convincing evidence").

The evidence showed that Petitioner faced a significant likelihood that he would be convicted of the charged crimes if he went to trial. As the PCR court explained, the case against

PAGE 18 – OPINION AND ORDER

Petitioner was strong. The two victims had given consistent, detailed accounts of the abuse throughout the investigation, and both were expected to provide believable and compelling testimony at trial. (*See* Resp't Exs. 124 ¶ 5; 127; 132 at 6.) In addition, Petitioner could not testify in his defense without revealing to the jury that he was previously convicted of sex crimes and that mere contact with the victims was a violation of his post-prison supervision. (*Id.*) Trial counsel also advised Petitioner that acquittal was improbable. (*see* Resp't Ex. 132 at 6, rejecting Petitioner's claim that trial counsel was ineffective by indicating that she "could not win this case" because that assessment was "realistic" given the evidence against Petitioner).

The evidence further showed that even without the possibility of a life sentence, Petitioner faced a substantially longer sentence if convicted at trial (420 months) than if he pleaded guilty (270 months). (Resp't Ex. 124 ¶ 5.) Trial counsel and the trial court informed Petitioner that he still faced a sentence exceeding 400 months if he avoided a life sentence (*id.*), and Petitioner acknowledged his understanding of that possibility when he signed the plea petition (*see* Resp't Ex. 126 at 124, acknowledging that a maximum sentence of ten years can be imposed for each of Counts 1-6, and one year for Count 7, and that "the judge may impose a sentence up to the maximum allowed by law").

Finally, the evidence permits the conclusion that the potential life sentence was not the determinative issue in Petitioner's decision to plead guilty. *See Lee*, 582 U.S. at 369 (noting that the prejudice inquiry "focuses on the defendant's decision making," and that courts should "look to contemporaneous evidence to substantiate a defendant's expressed preferences" with respect to issues that are "determinative" or of "paramount importance" in deciding whether to accept a plea deal). As the PCR court observed, "much" of Petitioner's testimony on this point was internally contradictory, contrary to the record, and inconsistent. (Resp't Ex. 132 at 3.) Although

Petitioner claimed that he would have insisted on proceeding to trial but for trial counsel's inaccurate advice, Petitioner did not mention his concerns about the potential life sentence in any of his court appearances. Furthermore, Petitioner's statements during the pretrial phone call indicate that the potential life sentence was but one of many considerations and concerns informing his decision to plead guilty. (*See* Resp't Ex. 127.) Finally, despite having learned when he arrived in prison that ORS 137.719 did not apply, Petitioner did not raise the issue in his initial PCR petition. (*See* Resp't Exs. 105.) Instead, Petitioner alleged that he "would have taken the first deal" offered but for his mistaken belief that DM had not testified before the grand jury and would therefore refuse to testify at trial. (Resp't Ex. 105 at 11.) Petitioner did not raise the presumptive life sentence issue until nearly eight months later. (*See* Resp't Exs. 106-107.)

Given this evidence, the PCR court reasonably concluded that Petitioner failed to prove he was prejudiced by trial counsel's inaccurate advice regarding the presumptive life sentence under ORS 137.719. Although Petitioner insists that the PCR court unreasonably discredited his testimony after ignoring or misinterpreting the evidence, the record reflects that the PCR court properly reviewed and considered the evidence before it and identified the specific evidence that supported its findings. That the PCR court's interpretation of the evidence differed from Petitioner's does not render its findings unreasonable, *see Wood v. Allen*, 558 U.S. 290, 301 (2010) (explaining that even if reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the [state] trial court's determination") (simplified), and this Court must defer to those findings here. *See* 28 U.S.C § 2254(e)(1); *see also Mann v. Ryan*, 828 F.3d 1143, 1161 n.4 (9th Cir. 2016) (stating that federal courts "defer to the reasonable credibility determinations made by the state post-conviction court"). Petitioner's additional arguments to the contrary are unavailing.

PAGE 20 – OPINION AND ORDER

Accordingly, this Court cannot conclude on this record that the Oregon Court of Appeals unreasonably applied federal law or made unreasonable factual determinations in affirming the PCR court's judgment denying relief. Because Petitioner has failed to establish that the ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement[,]" *Richter*, 562 U.S. at 103, it is entitled to deference. This Court thus denies habeas relief as to Grounds One and Two.

### III.    Petitioner is not Entitled to Habeas Relief on Ground Three, Four, or Five

Petitioner fails to advance in his supporting brief the merits of Grounds Three, Four, and Five. In addition, Petitioner does not challenge Respondent's arguments that those claims are procedurally defaulted. Accordingly, habeas relief is precluded as to Grounds Three, Four, and Five because they are procedurally defaulted, and Petitioner has failed to sustain his burden of demonstrating entitlement to habeas relief on those claims. *See* 28 U.S.C. 2248 (instructing that "[t]he allegations of a return to the writ of habeas corpus . . . , if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true"); *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (recognizing that a habeas petitioner carries the burden of proving his case).

///

///

///

///

///

///

///

## <u>CONCLUSION</u>

For the reasons stated, this Court DENIES the Petition for Writ of Habeas Corpus (ECF No. 1), and DISMISSES this proceeding, with prejudice. Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore this Court DENIES a Certificate of Appealability. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

DATED this 30th day of January, 2026.

/s/ Karin J. Immergut
_____
Karin J. Immergut
United States District Judge